May it please the court, my name is Rebecca Smith and I represent the appellants, the Wild West Institute and the Alliance for the Wild Rockies. Your Honor, I'd like to reserve approximately three minutes for rebuttal. Keep track and we'll do the best we can. Okay. We're here today to address what is the black hole that is the warranted but precluded designation for species under the that this would be a temporary stopgap measure. In practice the U.S. Fish and Wildlife Service uses it as a loophole to indefinitely delay protections for species that undisputedly warrant those protections. We're here today to deal with one of these species waiting in limbo which is called the whitebark pine. Let me make sure I understand precisely what's at issue here. The warranted but precluded designation for a species under the heading warranted but precluded. The question for us is whether or not the agency has sufficiently justified its conclusion that this one this listing is under comes under the heading warranted but precluded. That's the question? That's correct, Your Honor. So we have no power to say warranted but preclusion is a terrible idea not justified by statute. No, Your Honor. You don't have the ability to overrule the statute but you can apply the statute in line with congressional intent which was to avoid the foot dragging of the agency and to ensure that there was timeliness in the listing process. Let me ask you, I guess it's a preliminary question, since the time of decision by the district court the priority given to the whitebark pine has gone from a 2 to an 8. That's correct, Your Honor. I'm not sure this renders the suit moot as a matter of Article 3 but it might render it moot in the sense of preclusives or prudential mootness because what one might require for a justification warranted but precluded when the category is 2, you might have to say something very different when the category is 8. So why should we hear the case now, now that the category has moved from 2 to 8? Well, Your Honor, at the most basic level the issue is that every year by law the agency must issue a new determination. So in the statute... A new determination in terms of the number? A new determination as to whether the species is warranted but precluded. The Article 3b.3 requires a new 12-month finding and that was the attempt that Congress made to ensure that these warranted but precluded terminations would not exist forever. And so every 12 months they're supposed to issue a new finding. What they've actually done in practice is every 12 months they just sort of tear back to the original warranted but precluded determination and maybe give it one or two or three paragraphs. And so perhaps if the agency had actually been issuing a new full 12-month finding every 12 months I could understand that argument. But the fact is that every year they issue two or three paragraphs that tear back to that original 25-page finding that has all the scientific evidence in it. And so even though they changed the priority number just this year, that still tears back to that original 25-page ruling. Let me ask it this way then. How would, in your view, a sufficient explanation of the warranted but precluded category change when the number is now eight so it's way down the list instead of two, which I gather is actually in functional terms at the top of the list. That's correct, Your Honor. Well, so again, so our challenge to the original decision was that it was arbitrary and capricious because the representation that the agency made in the decision was false. They said that the whitebark pine was precluded by listing priority numbers one and two. The agency then admitted in its answer that there actually were no listing priority number one and that the listing priority number two is the number the whitebark pine itself has. And so on its face, that's an arbitrary and capricious decision because it's false. It's contradicted by the record. But your question is, now that they've changed it to eight, how would we get any relief in a remand, basically? Essentially, it would seem to me, at least off the top of my head, that the explanation necessary to justify a warranted but precluded category doesn't have to be quite so on the list as to be number eight instead of essentially being tied for everybody else at the top of the list. Well, there still does need to be a persuasive explanation. But just a minute, I think the question is, does the explanation need to change? I mean, my worry, I'm following his questions very carefully, because my worry is one of your arguments is there are some listings at three or four or five or six, whatever they were, who were given the chance to be, if you will, listed when you had a two sitting there and they weren't listed. Now you got an eight sitting there, so all of those would be ahead. So your argument makes no sense. And that's why I think Judge Yes, Your Honor, and so this basically brings up the doctrine of mootness, because essentially what we're saying is, what you're asking is, have they remedied the challenge to that original decision by changing the listing determination to a different number? Yeah, and it may be mootness doesn't, maybe mootness doesn't fully capture it. It may be, has the case now sufficiently changed that going forward, we really have a different case. And Your Honor, I do believe that is exactly what the mootness doctrine is about. So in every case where the court addresses mootness, essentially what the agency's, in this case, a case like this, what the agency does is somehow remedy the underlying documentation. And so generally in an Endangered Species Act case, what that looks like is you bring a consultation, then the agency does the consultation and says, now your case is moot, we already did exactly the analysis that you asked us to do. So that's the similar, the similarity between this case and those other mootness cases. And so this court, en banc in Karuk Tribe, addressed a very similar issue where the federal agency in that case, the U.S. Forest Service, was being challenged for not doing Endangered Species Act consultations during the pendency of the litigation. They said that the action was no longer happening. In other cases, they said that they've completed the consultation. And so that's when the mootness issue, the doctrine does come up, is when the agency has somehow done some sort of documentation that means that the original challenge to the original document is no longer at issue. So that's what this case is. They've put forward new documentation and they're arguing that that does moot our challenge to the original 2011 rule. And the doctrine of mootness, what that turns on, is whether there's still any effective relief that can be granted. If we look... So let's say we agree with you and that the explanation given for warranted but precluded when it was a number two listing is insufficient. How does that help? Because, okay, you screwed it up last time, but now with a number eight, okay, that doesn't tell me that you don't have to go forward with the listing because it's now a number eight. So how does a holding that you're right as to when it was a number two help you now when the listing is eight? Well, Your Honor, certainly the court can grant declaratory relief on that legal claim, but then the issue would be whether any injunctive relief is warranted. Why do we even get declaratory relief? Because what good does that do you? Well, Your Honor, because they're not actually issuing a new 12-month finding every 12 months as required by law. Every 12 months they issue a one or two or three paragraph finding that tears back to that original 2011 finding. So it's essentially a house of cards, where if that original 2011 finding was unlawful, then the agency can't continue tearing back to that every year. So perhaps the remedy would then be to declare that that 2011 finding was unlawful and remand back to the district court for a determination as to whether the new 2015 finding as a whole is sufficient and stands on its own, or whether it was inextricably tiered to that unlawful finding, and therefore the agency must issue a new finding to support its LPN eight designation. Now, I should confess I should know this, but I don't. So what's the timing with respect to the new listing number eight, and the suit in the district court, and coming to us, and the tearing back? Can you help me? The new tearing with respect to listing number eight. Yes, Your Honor. And can you run me through that? Yeah. So the briefing in this case was submitted in April of 2015, completed. It was not... Briefing to us? Yes, to the appellate court. It was not until December of 2015 that the agency decided to change the listing priority number to eight, and then shortly thereafter they filed a motion to dismiss in this court on the grounds that changing to eight mooted our entire appeal. Right. And so that... Has there been any tearing since the listing changed to eight? Well, Your Honor, that has been the most recent 12-month finding is that December 2015 finding, and that is only three paragraphs. It cites no evidence, no science. And is that finding both we change it to eight and we tear? Because there's two possible things that happen. Number one, we change the number from two to eight, and then the other thing that happens, and it may or may not happen simultaneously, is the explanation for why this falls into the warranted by precluded category. Did both of those happen at the same time then? Well, no, Your Honor, because the bulk of that analysis is in that 2011 decision. No, you're not understanding my question, and I'm sure you're not trying to avoid it. I know it's awkward. When... So I've got two pieces. Number one, when was the number changed from two to eight? December 2015. And when, if ever, was there an explanation or justifying warranted but precluded when the number was eight? The same. So it did happen simultaneously. So that's the three paragraphs that we're talking about, which we... Our position is that because it's only three paragraphs, they're necessarily relying, tearing back to that original 2011. I see. And that all happened while this case was on appeal to us. That's correct, Your Honor. So both of those things, those are both in the same three-paragraph court determination. There are also other annual candidate notices of review which have been issued since this one, right? No, Your Honor, not since the December 2015. No, no, I'm not talking... Again, my bad question. Not since December 2015, but since the 2011 notice here that's being appealed. We have two more that have been issued since then, don't we? Just to step back a minute, the 2011, we're not challenging the candidate notice of review from 2011. What we're challenging is the July 2007 final rule that the Whitebark-Pine is the agency then issued an annual candidate notice of review in the fall of 2011. And under law, it has to do that every 12 months. So it's happened every 12 months since... And you've never challenged any of these annual candidate notices of review since July of 2011? That's correct, Your Honor. And it's my understanding, these are all just because it seems to me these facts may change based on this change of eight, that there were in fact work pending at that time on 96 listing actions, including 730 species actually precluding work on this proposed listing. Eleven were final listings, 22 high priority, all of that. You never challenged that either, do you? Are you asking whether we challenged the 2011 candidate notice of review or subsequent candidates? No, if I'm to determine whether you made an arbitrary and capricious, whether the service made an arbitrary and capricious decision, I have to look at whatever, what other work they have going, right? And the other work they had going is what they say, there were 96 listing actions going at the time, involving 730 species actually precluding work on the proposed listing. Eleven were pending final listings, 22 were high priority pending listings. Each one of those were proposed listings that they had in front of them that precluded doing this one. I didn't find that you challenged that. No, Your Honor, our challenge is to the 2011 rule itself and not to any subsequent candidate notices of review. I'm not sure this is a subsequent. This is what they did. They, in July, published their findings. They gave what they said and they said, and as a basis for what we're determining in this particular action, we want you to know we have other pending listing actions. And they listed what they were. They said, we're working on 96 of them because some of them are only highly priority proposed listings. I didn't see, I mean, it seems to me you challenge that. They say they made expeditious progress on the listing of species, that they'd issued final rules as 183 species, also made 90-day and 12-month findings in hundreds of species. You didn't seem to challenge that. There is a lot of information that is in this, if you will, July 19, 2011 determination by the service which says why they did what they did. And it didn't seem to me that the only thing you challenged was the way they weighted those against the two. And, Your Honor, that's because the statute itself, so we're not just talking about a case here where there's an arbitrary and capricious standard where the agency's decision cannot be contrary to the record. We also have the explicit plain language of the Endangered Species Act itself at 16 U.S.C. 1533 B.3.B.i, which says, quote, that together with a description and evaluation of the reasons and data on which the finding is based. So as a matter of statutory plain language, they have to include information in the Wipe Our Pine Rule that demonstrates that it is with a description and evaluation of reasons and data that shows that it's actually precluded by pending proposals. I'm not even arguing about that. I'm glad to know your basis because that's what I thought the basis was. But given it's an 8 and not a 2, it seems to me that that makes a different analysis. And so, Your Honor, what we're talking about I think is two different things. One is that the original challenge to the 2011 rule, our challenge did demonstrate that that rule was arbitrary and capricious because they did not adequately put forth reasons and evaluation of data to justify. But what you're now asking about is now when it's a listing priority number 8. And so that's why we have to look at the mootness doctrine. We have to look at the capable of repetition yet evading review doctrine. It specifically addresses a situation where the agency decision changes every year or two and therefore evades judicial review. And this is really a critical point because in this case, the agency could be changing its listing priority number every single year because it's required to make a new 12-month finding every 12 months. And so if this court would hold that this case is moot, then it begs the question when will a plaintiff ever be able to fully litigate an appeal of a warranted but precluded determination because the agency can always, as it did in this case, simply issue a different listing priority number after the briefing is submitted. So we have no opportunity to brief a different issue. And now they say that the listing priority number has changed. We can't challenge on the species anymore. But the fact is that they can do that every 12 months. And if they keep doing that every 12 months, they will effectively foreclose any appellate review ever of a warranted but precluded designation. And so that's why we do have to look to the Evading Review Doctrine. And we also have to look at the Voluntary Cessation Doctrine because this is a voluntary action the agency took. We know that it could just as easily next year revert back to an LPN2. And the reason we know that is because they say their representation is that one of the threats has temporarily subsided. But if you look in their own exhibits, the exhibit to mountain pine beetle epidemics are cyclical. And given climatic conditions that are increasingly favorable to the beetle, we anticipate future epidemics will be more frequent and more severe. So by their own logic, they will be shifting back to an LPN2 at some point in the future. And so the question there is, then do we again challenge when they switch back to LPN2, and then again appeal, and then again after our appellate briefing is submitted, they change it to LPN8 again because the beetle epidemics are by their own nature cyclical. So we happen to have the unfortunate predicament where our timing of appeal is not timed correctly to the beetle epidemics. Right. So counsel, on the issue of capable repetition but evading review, does that mean we should just review whether they gave adequate reasons and data for the 2011 decision? Yes, your honor. That is correct. And of course, the second part of mootness is whether there is any effective relief that can be granted. And of course, the only real relief we're asking for here is a remand to the district court to set a schedule. We're not even asking for a specific finding, a specific date. All we want is for the district court to order us to negotiate and set a schedule. Set a schedule for what? For a final, for a proposed rule publication in the Federal Register. But that would be premised on our concluding that the explanation was insufficient. That's correct, your honor. So you want us to find, to hold that the explanation was insufficient. And I apologize for having us, having taken us on a long route with respect to mootness. And I know you're now over, but if you could tell us fairly much stuff. They did write a lot of stuff, your honor. And so our main argument here is they should not have represented that there was LPN1 species because there weren't. There were no LPN1 species. So that was a false representation. And then the other explanation they gave is that there were other LPN2 species that somehow were more important than whitebark pine. And so what they should have done in their decision is explain which species were more important and why. And that's what the California Native Plant Society District Court decision explicitly says. When you have a bunch of species and they're all the same number, you need to explain further why one is more important than the other. And that's all they would have needed to do. They cite to this top 40 list, but as we noted in our briefing, that's a boilerplate citation. And not a single one of the species on that top 40 list was an LPN2 that was actually listed in the fiscal year 2011. Okay. So, number one, they say that there are number ones and there aren't any. Correct. And number two, you say that they should be required to give us at least a rudimentary comparison between the number twos and this number two. That's correct, your honor. Got it. Thank you. Let's hear from... On that issue, there's a case, Kayla Chubb. What is the case, your honor? I don't know if I can pronounce it. I'm not sure I've got one. G-I-L-A. Kayla Chubb. I'm not sure that I know which case that is, your honor. Let me see if I can find her one. Kayla Chubb's case is one that's not in the biological diversity case. Right. Right, that's the case. Yes. That's what it is. So my question was, does that give guidance as to what the agency should have done, the data and reasons? Your honor, I'm sorry, I don't have the citation. Are you talking about, is that the Ninth Circuit's previous opinion on warranted but precluded designations? Is that the case you're asking about? I think so. That case does say at 466 Fed Third at 1099 that under the statute, the service has to identify proposals for other listings that preclude listing, and it expressly said that that determination has to be in the decision itself. And so in that Kempthorne decision, this court did uphold that plain language of the Endangered Species Act and require an explanation in the decision itself. Okay, thank you. And unless there's any further questions. Okay, let's hear from the other side, and we've taken you well over, but we will give you a chance to respond. Thank you, your honor. May it please the court. My name is Robert Stockman, here on behalf of the Fish and Wildlife Service. With me at counsel's table is Michael McGrady, who represents the state of Wyoming. I'm going to aim to speak for about 12 minutes and to leave three minutes for Wyoming. I'd like to begin with mootness. And after discussing it, I'd just like to make three major points on the merits. But the good news here is that the mountain pine beetle epidemic is subsiding, and as a result, the service reasonably changed the LPN from a two to an eight, which reflects the fact that the threat is significantly lower. And so in the most recent candidate notice of review, the service made a new finding that this was warranted but precluded. And I want to emphasize, I think it's a mischaracterization to suggest it's three paragraphs. First, there's three paragraphs about the whitebark pine status, but then it cites the assessment form, which is also available on the website, that then details all the scientific evidence that supports this, including 40 studies or more than 30 studies that weren't available at the time we made the original decision. And then there's numerous pages that go to the other findings that have to go with warranted but precluded about what is actually precluding work on it and are we making expeditious progress. And so it's simply not the same case as it was when they originally pled their claim. Counsel, the issue that bothers me on mootness is capable of repetition but evading. So how do you respond to that? Yes, Your Honor. So I think that exception does have a role to play at times. And one reason we didn't move to dismiss based on the four prior CNORs is that they weren't significantly different. And this is one of the things that, you know, trying to understand this court's precedent and how it deals with new agency decisions that come out after a challenge decision is when the new decision is capable of repetition yet evading review and is similar in the same exact ways as it was in Carrick Tribe. It was the same exact procedural violation. The court will invoke that doctrine. But when the new decision is different enough, and I'm going to use you use different language in different cases. In Ramsey v. Cantor, the court declined to apply that exception where an agency will be basing its rulings on different criteria or factors in the future. In Matter of Bunker, you declined to apply it when the two things weren't manifestly alike. In Aluminum Company, this court refused to apply that exception when the major issue might not recur. So the key thing here is the situation has changed enough that their claim is real, that the two decisions are different enough that it doesn't make sense for this court to try to litigate the 2011 decision. Well, let me push back on that one just a little bit. The beetle sounds as though your client even says beetle may very well come back because it's cyclical. And if it comes back, it sounds as though we may be back up to a two. So it sounds like capable of repetition yet evading review. Why is that the wrong analysis? Well, I think it's the wrong analysis for a couple reasons. First, I think if you look at Exhibit C of our motion to dismiss, you see that the difference between today and then is massive. And this is a cycle that apparently, to the extent it's cyclical, is well over a 10-year period. So the question is, is it going to recur? Litigation takes a long time. Ten years is a – I mean, so the other problem, I think, is that, you know, you can't grant relief as though it were a two today when it isn't. Well, we can say that, I mean, if we were to conclude this, that when it was a two, that this explanation was inadequate. And that would be helpful if the beetles come back. It would probably also be extremely helpful for any other two listing that gets a warranted but precluded categorization. It would be very unhelpful. Well, it would be unhelpful to you because you'd have to give more explanations. But it would be helpful if that's actually the right answer. But less resources would be devoted to listing. The resources would be taken from listing to prioritization. And that goes to the merits, and I'll get there, but I'd like to stay on mootness first. I think the reason it doesn't work is, the Supreme Court noted in Lewis v. Continental Bank, which is that when the theory the plaintiff has been pursuing the entire time no longer applies to the plaintiff, you can't issue declaratory relief, you can't give relief when the plaintiff no longer falls into the very category they were litigating on behalf of. But, of course, that's the whole purpose of the two linked doctrines of capable of repetition, yet evading review, and voluntary cessation. Now, there's no charge here by the other side that the voluntary cessation, that is to say the change in the listing from two to eight, was undertaken in bad faith. So I think this really is not a normal voluntary cessation case, but it looks an awful lot like capable of repetition, yet evading review to me. I think the problem, though, is what does the court review? Does it review the original decision, which is no longer the operative decision? The new decision supersedes. Of course, that's exactly what happens when you're doing capable of repetition, yet evading review. You look at the way it was rather than the way it is. It is the way that was and the way that may recur. That's exactly what happens with capable of repetition, yet evading review. Normally, when the court does that, it points to a reason to think the plaintiff will once again fall in, like once again need the relief offered by that determination. I mean, so normally, right, in biodiversity, this court applied it because the plaintiff had a long history of bringing lawsuits about the exact same issue, and it got mooted out. And in Keurig Tribe, this court applied it because the plaintiff objected to the same exact procedural flaw each and every time. But I'm not aware of any evidence, and they put forward none, that they have brought claims about other LPN2 species. They didn't file the petition in this case, but this is the species they are concerned about. And so I just don't, I think they have to make some showing that the declaratory relief they want will apply to them. Well, the whitebark pine's still going to be there when the beetle comes back. Yes, but that's very speculative. It's very strange to offer a declaratory order on a speculation about something that may occur. Well, it's more than a speculation. It's a statement that your agency has itself made as to the cyclical nature of the beetle infestation. But it's not clear they'll ever be as bad as they were. I mean, this was a unique, they are cyclical, but this was a uniquely bad epidemic, and we don't know for a fact that that will recur. I think the other dilemma here is that it may actually make them worse off, because this is now an LPN8. And the agency issued its work plan in the last month, and it's not binding, but it hopes to get to the species by fiscal year 2019. But if you apply the theory that you have to do twos first, that may push the whitebark pine back. So it's not clear that ordering and giving them declaratory relief would actually be good for this species. It may actually be bad for getting to this species. Well, who said anything about making the listing number the absolute and only criterion? Well, they did. Well, that's not the rule. No, it's not the rule. And I'm not sure that's really what they said. The rule is that it is an important factor. And I think, so moving to the merits, I think it's moot, but moving to the merits, I think that it's important to look at what this court said was actually required in these determinations, in Gila chub and yellow-legged frog. And the court forced the agency to meet the statutory requirements. And what the statute says that the agency has to find is that work is precluded by pending proposals to determine whether any species is an endangered species or a threatened species. And the agency also has to find that expeditious progress is being made. Here, the agency thoroughly did that. There's no question about that. They want to add a third category. Excuse me for interrupting. Did the agency make a mistake in saying that there were Category 1s also in front of them? The agency didn't actually say that. What did it say? Here's what it said. I'll read, but I'd also like to emphasize, this is an argument from their reply brief. A lot of their arguments are from the reply and were not presented to us, and that is fundamentally unfair. You can answer the argument right now. I'd love to go through the whole reply page by page. On proposed listing determinations for those candidate species with a... What are you reading from? Sorry. I can read along with you. Excerpt of record, page 167. Slow down, slow down. I'm old and I'm slow. Okay. Sorry, but where are we looking? Excerpt of record, page 167. Okay. I've got to find it. Sure. Excerpts of record, and my stuff may be organized a little bit differently. Is this in the Federal Register? Yes, it's the original finding. So, what date, Federal Register? 19th, 2011, July 19th. Okay, hang on. So, 2011, and what page of the Federal Register are we looking at? It was on page 42,649. 42,649, okay. Okay, I'm on that page, and it's got a lot of stuff. Okay, where on the page are you? So, at the very top, in the third column, we're reading the sentence, and it goes. The sentence is, unfortunately, a very unwieldy one, but it starts on the column below. For the above reasons, funding a proposed listing determination for the penis albicolus is precluded by court-ordered and court-approved settlement agreements, enlisting actions with absolute statutory deadlines, and work on proposed listing determinations for those species with a higher listing priority, i.e., candidate species with LPNs of one or two. Now, here's where that gets confusing, because i.e. means that is. As someone who's written these briefs, it's actually very hard, when there aren't LPN1s, to know whether to describe higher priority actions as 1s and 2s, because those would be higher priority, or just as 2s. If you only say 2s, people say, well, wait, what about the 1s? And if you say 1s and 2s, people say, but there aren't any 1s. So I think that they're suggesting that we made a finding there were 1s, but I think this is just about the difficulty of trying to express that idea. I'm inclined to agree with you, although it doesn't necessarily bail you out entirely. This all reads just like boilerplate. In fact, I've read this before, and almost all of your explanation looks like boilerplate. It does not look like it's specific to the whitebark pine. Well, I think the key part is when you get to excerpt of record, page 170 through 171, or 172. This is in the Federal Register, 42,652. Okay, hang on. It's 46,600? 42,652. Okay, I'm on that page. So this part has the tables that walk through the various things that are getting priority over the whitebark pine. And it identifies why they get priority. First, you have actions subject to court order settlement agreement. Then you have actions with statutory deadlines. Then you get to the high-priority listing actions. And then it lists each species and identifies the LPNs for each of the species within those packages. And what you see is that of these 22, all but two of them have at least one species that has an LPN of 2. And the last two are the Miami butterfly, which merited an emergency listing. Now the last two, where are you? What page are you on? These are on pages 171 and 172. Okay, so wait a minute. On 172, I've got Tennessee river mussels. So sorry, when I said last two, I meant the only two that don't have an LPN of 2. They're mixed in with the others because they are just as important as the others. Yeah, so which ones are you talking about then? The Miami blue butterfly is one of the only ones that had an LPN of 3. You're talking too fast. Sorry. Where is the Miami blue butterfly on page ER 171? It's on ER page 171. Yeah, where? It's in the middle of the high priority listing actions. Okay, now I got it. It's got a 3. Okay, proposed listing it's called. So first it was partially funding. The footnotes indicate when the funding began, which that's part of the explanation here is that when we started work on something before, we don't stop work just because a new petition came in the door. And here this was funded by prior years, and so we kept working on it, which footnote 3 indicates. And the same is true of the only other species with LPNs of 3, which is the Puget Sound prairie species, and that's the last one in that table. It doesn't sound like you're from around here. It's Puget Sound. Oh, sorry. I'm not. I'm from the East Coast. I apologize. Name it after Peter Puget, just so you know. Oh, Peter Puget. And if you look right out there, that's Puget Sound. It's beautiful. Okay. So I guess the point I'm trying to make is that where we break down the details is not in that opening, which is true. It's sort of a boilerplate, which makes sense. We have a set of rules that we follow. But later in each of these decision documents, we lay out what gets prioritized, and it's clear from this that LPNs play a major role in that process. And I mean, they won't come out and admit it, but the main thing they are trying to accomplish is saying we can't do packages where there's a higher LPN, which would really slow down the program. I mean … You're talking about a higher LPN for one of the species? For one of the species. Because it seems to me, I mean, I would have said the Arizona plants, the Acuna cactus didn't make it either, but they do have one Girish Mellow, I don't know how to say that next two words, LPN2 at the bottom. Exactly. And this is the thing that is sort of going on, is that we're doing LPN2s, and then we do other species that are like that, that have similar threats, are in the same geographic area, to be efficient. And they're basically saying you can't do that, because you still have the whitebark pine. And that's where their rule of law would take us. And that's not required by the statute or by the regulations. The statute does not say that, it says you have to prove it's actually precluded by pending proposals. It doesn't say by pending proposals at greater threat. Congress specifically rejected that option, because they knew that it would lead to a whole, I mean, there's a bit of speculation, but one thing it would have led to, is a huge amount of extra litigation about our priority scheme, instead of about getting things on the list. And when the agency promulgated the LPN guidelines in 1983, they said we retain flexibility because we want to be efficient, and we want to consider exactly the factors we consider here. Have we already spent money on it? Can we do a bunch together? And they got comments from numerous environmental groups saying that's a good idea. And so if the law required it, then yes, the court should say you have to prove X. But the law very specifically doesn't require it. And Congress very specifically chose not to do that. And so the court shouldn't impose a procedural and substantive obligation that isn't in the statute, particularly since, as a practical matter, it would have very bad effects. I mean, it would divert a lot of resources from our listing, getting things on the list, to prioritizing. And one more fact I'd like to add, and I'm using up a lot of my colleagues' time, which I feel bad about. Not only a lot, all. Oh, sorry. So you finish up, and then we'll decide whether the politeness of your Wyoming colleague will be held against him. Yeah. I guess the last point I'd just like to make is they suggested this was a black hole. The 2015 CNOR shows that we've gone from 250 candidates down to 60, and that's while adding tons of candidates. We've done 220 species. What Congress wants with this preclusion determination is for the court to make sure we're not foot-dragging, and I think both the original finding and the new finding show we're not. Okay. And, in fact, as I understand it, the new findings from 2015 will not have these, if you will, findings that they evidently agreed to that you were suggesting in the prior findings about how many were under review, how many had been done, what you're going to do next. The new will have a new set saying we've done all those that we had in the prior. I believe you're referring to the settlement, the MDL settlement. We are finally finishing up the MDL settlement, which has been a huge success, and that will no longer be governing it. But it is true that played a major role. We were under court order, and we prioritized those, but that also got them off the candidate list. But that is almost over now. So, really, the 2016 CNOR will have the last of those off. Thank you very much. Thank you. And you'd sought, unsuccessfully, to save three minutes for your colleague from Wyoming, Mr. McGrady. Would you like three minutes, Mr. McGrady? I hope to not take the full three. I just wanted to step back a second and sort of bring in something my colleague was indicating. That is that the Endangered Species Act does not require the agency to operate on addressing the worst first. That's not found in the statute. It's not found in the agency's regulations. That's what they would like, and that is the goal. However, for practical purposes, the agency is given that discretion to determine which species to work on. And it makes practical sense, because you have to remember the agency also has an independent obligation, outside of this petition for species scenario, to identify those species that could be threatened or endangered. So they have their own independent obligation to be working on that stuff, while at the same time there's this other citizen petition provision, over which the agency has no control when that petition's coming in. They have no control how many species will be under that list, or how complex the problem will be presented to them. And so the agency should be afforded that discretionary option of determining what species to work on and when, what resources to apply and not. So the predicate decision that you have to make, whether you're looking at this as mootness or you're looking on the merits, is a determination of whether the Endangered Species Act requires the worst first. On the one hand, you have Wild West Institute's particular argument that's not entitled to deference and is very rigid. And on the other, you have the agency's interpretation that is entitled to deference and provides that flexibility and efficiency Congress intended in the Endangered Species Act. Therefore, Wyoming asks that you affirm the district court. Thank you. Thank you. Two minutes. I just have a few points, Your Honor. First, regarding the government's representation that in the past there was a uniquely bad epidemic. That's false. Their own exhibit C at 33 says, quote, we anticipate future epidemics will be more frequent and severe. So it's going to get worse. Second, we are not arguing that, of course, the guidelines for listing priority numbers are necessarily enforceable in every case. What we're saying is in this case, at ER 167, the agency said in their summary paragraph, funding a proposed listing determination for Pinus. I'm going to do the same thing I did to your colleague. I'm on page 167. Where are you reading from? Your Honor, I'm reading at the third column at the very top. It starts at the bottom of the second column in the middle. That's the same sentence that was just read to me. Exactly. I've now read this several times in preparation for the argument, and I'm reading it again. Okay, Your Honor. Then I won't repeat it, but it does specifically say species with LPNs 1 through 2, and I wanted to respond to your question of whether that's a boilerplate. He gave it to us in English, i.e., id est. But that really means, okay, that is, that's an explanation. With a higher listing priority, that is 1, 2. And it doesn't say there are in existence, as we hear contemplate, listings 1. It doesn't say that. Well, it says proposed listing determinations for those candidate species with a higher listing priority, i.e., candidate species with LPNs 1 through 2. I read that as an explanatory boilerplate rather than a statement of we're not getting to number 2 because we got some number 1s. And the reason we disagree is because in other warranted but precluded determinations, such as the sage-grouse, they say, i.e., entities with LPN of 7 or lower. In the wolverine, they said, i.e., entities with LPN 5 or less. So they do change that sentence to link up to the species that they are talking about. And I just wanted to make that point. Your Honor, in addressing his point that it's not a black hole because they recently added 220 species,  because litigation seems to be the only thing that spurs the agency to finally issue determinations for warranted but precluded designations. And so I would just like to end here today by saying that if the court orders them to issue a rule, they will do that, they will request funding, and it will happen. If we don't have a court order that says they need to issue a rule, they're not going to do it. And unless there's any further questions, that's what I have. Thank you very much. Thank both sides for their argument. Thank you.
judges: W. Fletcher, Gould, N.R. Smith